# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 19-40499

D.C. Docket No. 4:18-CR-87-2

United States Court of Appeals
Fifth Circuit

**FILED**
May 1, 2020

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

    Plaintiff - Appellant

v.

MARK JORDAN,

    Defendant - Appellee

Appeal from the United States District Court for the
Eastern District of Texas

Before ELROD, SOUTHWICK, and HAYNES, Circuit Judges.

## J U D G M E N T

This cause was considered on the record on appeal and was argued by counsel.

It is ordered and adjudged that the judgment of the District Court is affirmed.

**Certified as a true copy and issued
as the mandate on Jun 16, 2020**

**Attest:**
**Clerk, U.S. Court of Appeals, Fifth Circuit**

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 19-40499

D.C. Docket No. 4:18-CR-87-1

United States Court of Appeals
Fifth Circuit

**FILED**
May 1, 2020

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

    Plaintiff - Appellant

v.

LAURA JORDAN, also known as Laura Maczka

    Defendant - Appellee

Appeal from the United States District Court for the
Eastern District of Texas

Before ELROD, SOUTHWICK, and HAYNES, Circuit Judges.

J U D G M E N T

This cause was considered on the record on appeal and was argued by counsel.

It is ordered and adjudged that the judgment of the District Court is affirmed.

**Certified as a true copy and issued
as the mandate on Jun 16, 2020**

**Attest:**
*Lyle W. Cayce*
**Clerk, U.S. Court of Appeals, Fifth Circuit**

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 19-40499

United States Court of Appeals
Fifth Circuit
**FILED**
May 1, 2020
Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

    Plaintiff – Appellant,

v.

LAURA JORDAN, also known as Laura Maczka; MARK JORDAN,

    Defendants – Appellees.

Appeal from the United States District Court
for the Eastern District of Texas

Before ELROD, SOUTHWICK, and HAYNES, Circuit Judges.

JENNIFER WALKER ELROD, Circuit Judge:

    In this criminal case, a court employee told the district judge's law clerks that he had spoken to one or more jurors about the case during deliberations. The district court thereafter granted the defendants' motion for a new trial on the basis of prejudicial outside influence on the jury. On appeal, the Government argues that the district court abused its discretion by granting the motion without holding an evidentiary hearing. We conclude otherwise and AFFIRM.

I.

    The Government charged Laura and Mark Jordan with conspiracy, honest services wire fraud, and bribery involving a federal program. The

Case: 19-40499 Document: 00515453480 Page: 2 Date Filed: 06/16/2020
Case 4:18-cr-00087-ALM-CAN Document 231 Filed 06/16/20 Page 4 of 14 PageID #: 5903

No. 19-40499

charges concerned Laura Jordan's 2013–2015 tenure as mayor of Richardson, Texas. During that time, according to the Government, she accepted gifts and favors from real estate developer Mark Jordan in exchange for favorable votes on city rezoning measures. The two eventually married.[1]

The charges were filed in 2018, and trial began in February 2019. Soon after deliberations started, the jury sent the district court the following note: "[Juror] No. 11 is very upset and feels they can't continue. What can we do? She's asking to be excused and can't vote." The district court suggested that it conduct an *ex parte* interview with Juror #11 to discover what the issue was, and the parties agreed. In the interview, Juror #11 stated that she wanted to be excused because "[i]t [wa]s making [her] sick to [her] stomach to convict them and [she] just can't." She also stated that sticking to her guns would produce "a hung jury." The district court responded with the following:

> That's a vote, so that—so what I'm saying is I'm not encouraging you one way or another, because what would happen is—well, you can't worry about the consequences. Every juror should re-examine their own views is what I say in the charge, and if you have a firmly held conviction, whatever that conviction is, that's up to you to decide. You have to make your own decision.

After the meeting was over, the district court relayed its essence to the parties in general terms. The Government asked that Juror #11 be excused, but the district court—in a second *ex parte* meeting—informed Juror #11 that it had decided not to excuse her. It reiterated to Juror #11 that "whatever your convictions are, those are your convictions, and each juror makes their own decision about what the evidence is and what the verdict should be, and so that's up to you. Every juror is entitled to their opinion about the evidence and

---

[1] Prior to the marriage, Laura Jordan was known as Laura Maczka.

2

Case: 19-40499    Document: 00515453480    Page: 3    Date Filed: 06/16/2020
Case 4:18-cr-00087-ALM-CAN Document 231 Filed 06/16/20 Page 5 of 14 PageID #: 5904

No. 19-40499

the result." A few hours later, the jury reached a verdict of guilty on almost every count.[2]

The next day, at a detention hearing, the district judge had some troubling news for the parties. He told them that he had learned about a conversation that had taken place the previous afternoon—shortly after the verdict was rendered—between his law clerks and a Court Security Officer (CSO). According to the law clerks, the CSO had stated that he had spoken to a juror regarding the case about "30 to 45 minutes" before the verdict was rendered. During a teleconference held the following week, the district judge also relayed that he had learned from his law clerks that the juror the CSO had spoken to was Juror #11. The Government asked whether the district court was intending to "hold any kind of hearing or get testimony from the juror," to which the district court responded that "that is fine in terms of the [CSO]" but that it was "not going to subject [jurors] to examination on the witness stand." The district judge also noted that his law clerks had prepared a written memo detailing their recollections of the conversation.

A few days after the teleconference, the Government emailed the district court to "propose[ that] the Court instruct the CSO to answer targeted interrogatories about what precisely . . . the CSO said to any juror." The same day, the district court filed the law clerk memo under seal. Law Clerk #1 reported that

> [The CSO] indicated that while the jurors were on a break from deliberations, he observed [Juror #11] was particularly upset and even crying. He relayed to me and my fellow law clerks that he told her to put her emotions aside and to determine the outcome of the case without regard to emotions or the possible sentence in the case reminding her that her job was to determine whether the defendants were guilty or not guilty. He then indicated that the

---

[2] Laura Jordan was found not guilty of one count of honest services wire fraud.

jury reached a verdict in this case within about 30-45 minutes of this conversation.

Law Clerk #2 reported that the CSO "stated that he told this juror that she should vote based on her conscience without regard to the punishment that may be imposed on the Defendants." Law Clerk #2 added that

> The next morning, Officer Collins told me that, when asked to confirm her decision before the Court, a juror had intended to state that her decision was made "with reservation." Officer Collins stated that the juror could not say that her decision was made "with reservation" because her response would not be believed. I do not know if this was Officer Collins' commentary to me on the matter or whether he told the juror this. He did tell the juror, however, that she should vote her conscience and that if she did not believe the defendants were guilty, she should vote not guilty. He also told her that she should not be concerned about any punishment the defendants may receive.

The identity of this latter juror is unknown.

> Law clerk #3 reported that
>
> Officer Collins stated . . . that he told the juror(s) they needed to set their emotion aside and determine whether the Defendants committed the crimes or not. Officer Collins continued, stating he told the juror(s) that if they thought the Defendants committed the crimes, they should find the Defendants guilty, and if they thought the Defendants did not commit the crimes, they should find the Defendants not guilty.[3]

The next day, the Jordans filed a motion for new trial under Federal Rule of Criminal Procedure 33. They argued that a new trial was warranted because (1) the CSO's comments improperly influenced the jury, (2) the district court gave an improper *ex parte* instruction to Juror #11, and (3) Juror #11's

---

[3] The fourth and final law clerk was not involved in the conversation with the CSO.

Case: 19-40499   Document: 00515453480   Page: 5   Date Filed: 06/16/2020
Case 4:18-cr-00087-ALM-CAN Document 231 Filed 06/16/20 Page 7 of 14 PageID #: 5906

No. 19-40499

decision-making was influenced by poor physical and emotional health. The Government argued that "[alt]hough the Court can *deny* the motion for new trial at this stage based on the lack of competent evidence, it cannot *grant* the motion, at least without holding an evidentiary hearing."

About six weeks after the motion for new trial was filed, the district court granted it without holding an evidentiary hearing. The district court rejected the Jordans' arguments relating to its *ex parte* meetings and Juror #11's health, but accepted their argument that the CSO improperly influenced the jury. Relying on the law clerk memo for the substance of the CSO's comments, the district court ruled that those comments contaminated jury deliberations to the point that the Jordans were denied their Sixth Amendment right to a fair trial.

The Government appeals.

## II.

"We review only for abuse of discretion a court's handling of complaints of outside influence on the jury." *United States v. Mix*, 791 F.3d 603, 608 (5th Cir. 2015) (quoting *United States v. Smith*, 354 F.3d 390, 394 (5th Cir. 2003)). "We review a district court's grant of a new trial under Federal Rule of Criminal Procedure 33 using the same abuse-of-discretion standard." *Id.*

"To be entitled to a new trial based on an extrinsic influence on the jury, a defendant must first show that the extrinsic influence likely caused prejudice." *Id.* "The government then bears the burden of proving the lack of prejudice."[4] *Id.* "The government can do so by showing there is 'no reasonable possibility that the jury's verdict was influenced by the extrinsic evidence.'" *Id.* (quoting *United States v. Davis*, 393 F.3d 540, 549 (5th Cir. 2004)).

---

[4] The test used to be different: "any outside influence on the jury was presumptively prejudicial; the burden fell on the government to rebut this presumption." *United States v. Sylvester*, 143 F.3d 923, 933 (5th Cir. 1998).

No. 19-40499

III.

The Government argues that the district court abused its discretion by granting the motion for new trial without holding an evidentiary hearing. We conclude that the district court's decision falls within its broad discretion in these matters.

A.

The Government's first argument is that our precedent creates a "bright-line rule" that, when a district court is confronted with credible allegations of outside influence on a jury, it must hold an evidentiary hearing. It quotes a quartet of cases to support that proposition: *United States v. Sylvester*, 143 F.3d 923, 932 (5th Cir. 1998) (stating that our precedent "require[s] a district judge, when confronted with credible allegations of jury tampering, to . . . hold a hearing with all parties participating"); *United States v. Denman*, 100 F.3d 399, 405 (5th Cir. 1996) ("The trial court is required to conduct a hearing to determine the circumstances of the communication, its impact on the juror, and whether prejudice resulted."); *United States v. Webster*, 750 F.2d 307, 338 (5th Cir. 1984) ("The failure to hold a hearing in such a situation constitutes an abuse of discretion and is reversible error."); and *United States v. Chiantese*, 582 F.2d 974, 979 (5th Cir. 1978) ("[I]n instances where the jury misconduct involves influences from outside sources, the failure of the trial judge to hold a hearing constitutes an abuse of discretion and is therefore reversible error.").

Notwithstanding the Government's cherry-picked quotations, such a bright-line rule does not exist. As we explained in *Sylvester* itself, "[w]e do not mean to suggest that a district court is obligated to conduct a full-blown evidentiary hearing every time an allegation of jury tampering is raised." 143 F.3d at 932 n.5. Instead, "[o]ur precedents allow the trial judge the flexibility, within broadly defined parameters, to handle such situations in the least disruptive manner possible." *United States v. Ramos*, 71 F.3d 1150, 1153 (5th

Case: 19-40499 Document: 00515453480 Page: 7 Date Filed: 06/16/2020
Case 4:18-cr-00087-ALM-CAN Document 231 Filed 06/16/20 Page 9 of 14 PageID #: 5908

No. 19-40499

Cir. 1995); *see also United States v. Smith*, 354 F.3d 390, 395 (5th Cir. 2003) (noting "our longstanding rule that a district court is entitled to discretion in investigating and resolving charges of jury tampering"). This broad grant of discretion makes sense: to "underscore the obvious, . . . the trial judge is in the best position to evaluate accurately the potential impact of the complained-of outside influence." *Ramos*, 71 F.3d at 1153–54; *see also* Fed. R. Crim. P. 33(a) (permitting district courts to grant a new trial whenever "the interest of justice so requires").

To the extent the line of cases the Government cites abrogates this discretion at all, it does so in the context of ensuring that district courts do not *deny* a motion for new trial without sufficient investigation where the court is "confronted with credible allegations" of prejudicial outside influence on the jury. *Sylvester*, 143 F.3d at 932. Courts must take allegations of outside influence seriously, as the whole "theory of our system is that the conclusions to be reached in a case will be induced only by evidence and argument in open court, and not by any outside influence, whether of private talk or public print." *Patterson v. Colorado*, 205 U.S. 454, 462 (1907).

The Government cannot cite a single case in which we vacated a district court's *grant* of new trial for failure to hold a hearing. The quartet of cases it does cite for its alleged "bright-line rule"—in only one of which we actually remanded for a hearing at all—were cases in which the district court *declined* to grant a new trial.[5] *See Sylvester*, 143 F.3d at 932; *Denman*, 100 F.3d at 406; *Webster*, 750 F.2d at 337–39; *Chiantese*, 582 F.2d at 980. Indeed, we have previously ordered new trials on the basis of the trial record without requiring

---

[5] We note, moreover, that each of our alleged "bright-line rule" statements arose in the context of ensuring that *criminal defendants* were not denied a new trial without investigation when they credibly alleged outside influence on the jury. After all, it is criminal defendants who "enjoy the right" to a trial "by an impartial jury" under the Sixth Amendment. U.S. Const. amend. VI.

Case: 19-40499      Document: 00515453480      Page: 8      Date Filed: 06/16/2020
Case 4:18-cr-00087-ALM-CAN   Document 231   Filed 06/16/20   Page 10 of 14 PageID #: 5909

No. 19-40499

the district court to hold a hearing. *See, e.g.*, *United States v. Peters*, 349 F.3d 842 (5th Cir. 2003); *United States v. Cowan*, 819 F.2d 89 (5th Cir. 1987).

The Government also attempts to support its "bright-line rule" with the Seventh Circuit's decision in *United States v. Bishawi*, 272 F.3d 458, 462 (7th Cir. 2001), arguing that *Bishawi* stands for the proposition that district courts are not "equipped to adequately assess the impact of" alleged outside influence without "[t]he holding of an evidentiary hearing." *Id.* at 462–63. The Government's quotation of the *Bishawi* rule is incomplete and thus misleading: *Bishawi* states only that a hearing is required where "the record is void of any specific information regarding the occurrence and nature of, as well as the circumstances surrounding the" outside influence. *Id.* at 462. It is unremarkable that, when faced with (1) credible allegations of prejudicial outside influence on the jury and (2) a record devoid of information on which to evaluate those allegations, "a hearing in which all interested parties are permitted to participate is not only proper but necessary," *id*; *see also Remmer v. United States*, 347 U.S. 227, 229 (1954) (remanding for a hearing because it was impossible to "know from th[e] record . . . what actually transpired"). But that is not this case. Here, the district court relied on the near-contemporaneous account of the CSO's comments provided by the three law clerks, which it filed on the record.

Thus, to the extent there is any "bright-line rule" applicable to allegations of outside influence on the jury, it is not one applicable to this case.

## B.

We analyze the district court's exercise of its broad discretion not to hold a hearing in an outside-influence case only to ensure that the district court permissibly balanced the costs, benefits, and interests at stake. *See, e.g.*, *Ramos*, 71 F.3d at 1153 ("In determining whether to conduct a hearing in a case such as this, the court must balance the probable harm resulting from the

8

Case: 19-40499  Document: 00515453480  Page: 9  Date Filed: 06/16/2020
Case 4:18-cr-00087-ALM-CAN  Document 231  Filed 06/16/20  Page 11 of 14 PageID #: 5910

No. 19-40499

emphasis such action would place upon the misconduct and the disruption involved in conducting a hearing against the likely extent and gravity of the prejudice generated by the misconduct." (quoting *Chiantese*, 582 F.2d at 980)).

In the unique circumstances of this case, the district court did not abuse its discretion by determining that the additional benefits of a hearing were too slim to overcome the "unnecessary attention" and disruption a hearing would inject into this "high-profile case," given that it already had "sufficient" documentation of outside influence to warrant a new trial. As the district court noted, the law clerks "have no personal interest in this case" and "prepared the [memo] shortly after the events in question," adding to its reliability. Moreover, the district court made the memo available on the docket for the parties' reference in briefing the motion for new trial.

The Government does not persuasively explain what purpose an evidentiary hearing would have in this case. It primarily argues that the law clerk memo could not possibly be a standalone basis for granting a new trial because it is hearsay and thus inadmissible. We do not here establish a general rule governing whether or not a new trial grant should be based on admissible evidence in a mine-run case. Rather, in this unique context, we simply conclude that the district court permissibly granted a new trial based on reliable information it discovered during the regular operation of its chambers.[6]

In sum, the district court did not abuse its discretion in exercising its prerogative, "within broadly defined parameters, to handle [the allegation of outside influence] in the least disruptive manner possible" in this unusual case. *Ramos*, 71 F.3d at 1153.

---

[6] The district court ruled that the law clerk memo—and the statements therein—were admissible. Given our just-stated conclusion, we need not reach this issue.

Case: 19-40499    Document: 00515453480    Page: 10    Date Filed: 06/16/2020
Case 4:18-cr-00087-ALM-CAN   Document 231   Filed 06/16/20   Page 12 of 14 PageID #: 5911

No. 19-40499

C.

The Government's final argument is that, even fully crediting the law clerk memo, the CSO's statements did not merit a new trial because they were "innocuous, defense-friendly, and duplicative of the district court's own instructions."

We conclude that the district court did not abuse its discretion in granting a new trial in this case. In urging Juror #11—whose comments to the district court evinced her great distress at the prospect of conviction—to vote "without regard to the punishment that may be imposed,"[7] the CSO arguably conveyed a preference for a guilty verdict. The same goes for the CSO's similar comment to the unidentified juror when that juror voiced an intention to vote "with reservation." Worse, the CSO's statement that the jury should return a guilty verdict "if they thought the Defendants committed the crimes" can be reasonably understood as urging a standard for conviction that is lower than the correct one, which "requires proof beyond a reasonable doubt." *United States v. Fields*, 932 F.3d 316, 321 (5th Cir. 2019). Finally, the CSO's "official character . . . as an officer of the court" gave his comments a veneer of authority that could have "carrie[d] great weight with a jury." *Parker v. Gladden*, 385 U.S. 363, 365 (1966).

"District judges have considerable discretion with respect to Rule 33 motions." *United States v. Simmons*, 714 F.2d 26, 31 (5th Cir. 1983). The district court permissibly concluded that this evidence showed a sufficient likelihood of prejudice to shift the burden to the Government, and further that the Government did not (and could not) show "no reasonable possibility that

---

[7] Or, in another law clerk's words, "without regard to . . . the possible sentence in the case."

Case: 19-40499     Document: 00515453480     Page: 11     Date Filed: 06/16/2020
Case 4:18-cr-00087-ALM-CAN   Document 231   Filed 06/16/20   Page 13 of 14 PageID #: 5912

No. 19-40499

the jury's verdict was influenced by" the CSO's comments. *Mix*, 791 F.3d at 608 (quoting *Davis*, 393 F.3d at 549).

## IV.

For the reasons stated, the district court's order granting a new trial is AFFIRMED.

# *United States Court of Appeals*
## FIFTH CIRCUIT
### OFFICE OF THE CLERK

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE,**
**Suite 115**
**NEW ORLEANS, LA 70130**

June 16, 2020

Mr. David O'Toole
Eastern District of Texas, Sherman
101 E. Pecan Street
Federal Building
Room 216
Sherman, TX 75090-0000

    No. 19-40499    USA v. Laura Jordan, et al
                         USDC No. 4:18-CR-87-1
                         USDC No. 4:18-CR-87-2

Dear Mr. O'Toole,

Enclosed are copies of the judgments issued as the mandate and a copy of the court's opinion.

                              Sincerely,

                              LYLE W. CAYCE, Clerk

                              By: _____
                              Nancy F. Dolly, Deputy Clerk
                              504-310-7683

cc:  Mr. Dan Lamar Cogdell
     Mr. Christopher Andrew Eason
     Mr. Jeffrey A. Kearney
     Ms. Rachel Li Wai Suen
     Mr. Barry J. Pollack
     Mr. Grover Glenn Roque-Jackson
     Mr. David Hunter Smith
     Mr. Bradley Elliot Visosky