UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| v.  § | NO. 4:18-CR-87 |
| § | Judge Mazzant |
| LAURA JORDAN (1) § | |
|     a/k/a Laura Maczka § | |
| MARK JORDAN (2) § | |

### GOVERNMENT'S RESPONSE TO DEFENDANTS' MOTION TO STAY RULINGS AND SENTENCING

Sentencing for Defendants Laura and Mark Jordan is set for August 4, 2022. Various post-trial motions filed by the Jordans in October 2021 remain pending. Now the Jordans have filed a motion asking the Court to stay its ruling on the pending motions and the upcoming sentencing based on a recent one-judge order granting release pending appeal in *United States v. Hamilton*, No. 21-11157 (5th Circuit). The Jordans identify only one issue that is common to both cases that, in their view, warrants a stay: "whether the element of a *quid pro quo* is required for a conviction of giving or accepting a 'reward' (a gratuity) under 18 U.S.C. § 666(a)(1)." Motion to Stay (doc. 389) at 1-2. Even if the answer to that question is "yes," it would make no difference in this case because the government proved, and the jury found, *quid-pro-quo* bribery. There is thus no reason for a stay based on *Hamilton*. The Court should deny the Jordans' motion.

1

A jury convicted Ruel Hamilton of two counts of federal-programs bribery under 18 U.S.C. § 666, and one related conspiracy count under 18 U.S.C. § 371. Hamilton raises many different points of error on appeal. *See generally* Ex. A, Hamilton Opening Br. The parties in *Hamilton* have completed briefing on the merits, and the panel assigned to the appeal heard argument on July 8, 2022. Though Judge Leslie Southwick had denied Hamilton's motion for release pending appeal early on in the appeal, Hamilton filed another such motion after oral argument. This time Judge Jennifer Walker Elrod issued an order granting the motion. She identified only two issues raised by Hamilton that, in her view, presented a "substantial" — that is a "close" or "fairly debatable" — question of law: "whether § 666 covers mere gratuities or unofficial acts, and if so, whether his conviction is constitutional in light of certain Supreme Court decisions." Ex. B, *Hamilton* Release Order at 2. The latter question — whether § 666 covers unofficial acts — is not at issue in this case because the Jordans did not raise it in their post-trial motions. And there is no dispute that the actions taken by Laura Maczka at the relevant times (her votes), in her capacity as mayor of the City of Richardson, were official acts.

The Jordans did, in one of their post-trial motions for judgment of acquittal/new trial, argue that § 666's "bribery provisions either do not include gratuities or may not be applied to gratuities or any other conduct less egregious

than bribes and kickbacks." Motion for Judgment of Acquittal/New Trial (doc. 347) at 10. As explained in the government's omnibus response, most circuits that have addressed whether § 666 is limited to *quid-pro-quo* bribery have held that it is not so limited. Govt's Omnibus Response at 11-12. The Jordans and Hamilton have identified only one circuit that disagrees. *See United States v. Fernandez*, 722 F.3d 1, 26 (1st Cir. 2013). The government believes that the majority position among the circuits is correct, but even if it is not — that is, even if the *Hamilton* panel sides with *Fernandez* — the Jordans' § 666 convictions should stand because the record convincingly shows that the jury convicted them under a *quid-pro-quo* bribery theory.

Put simply, this case was tried as a *quid-pro-quo* bribery case, not a gratuity case, as the following examples from the parties' arguments at trial show (emphasis added):

- Ms. Rattan (voir dire): "**This is a bribery case. You cannot accept value for a vote. Value for a vote.**" (Trial Tr. at 18)
- Ms. Rattan (voir dire): "Bribery? You bet. Value for a vote. The developer giving value for a vote from the mayor." (19)
- Mr. Cogdell (voir dire): "Relationship or a bribe?" (27)
- Ms. Rattan (voir dire): "Is there a *quid pro quo*, something for something. Yes." (82)
- Ms. Rattan (voir dire): "**So one thing that we've gotten at when we've talked about intent and *quid pro quo*, is how do you show that?** How do you show what someone intended? They don't often come up and say, hello, I have something of value for you. Would you vote for me?" (100)

3

- Ms. Lobel (voir dire): "One of the things she said about the law is what we're talking about here in this case – and this is particular to this case – is we're talking about a *quid pro quo*. **A *quid pro quo* is the foundation for an actualization of bribery.** What does that mean? Quid, something; pro, for; quo, an official action. I think vote is what Ms. Rattan said, *quid pro quo*. That's half – that's half the thing." (141-42)

- Ms. Lobel (voir dire): "Corrupt intent. That means something that is done corruptly. There will be explanations of that, and the judge will guide the jury about what corruptly means. I think the word corrupt says it all. I think that most people know when they hear the word corrupt, what it means. And those are guiding – I completely agree, guiding legal principles here. **Did somebody do – give something to someone to get them to vote their way.**" (142)

- Ms. Moore (voir dire): "**And specifically what they have to prove is that there was a *quid pro quo*.** You heard that, right? You heard that fancy word, meaning in exchange for an official act. **If you're the mayor, in exchange for your official act I am giving you something and I am receiving in exchange of your official act, your vote. They have to prove bribery. Not just that I gave you a gift.** I have to – I have – the giver has to give the gift with the specific intent to – a corrupt intent to get your vote. **The receiver has to say, I will thank you for that gift, I appreciate that, and I'm going to take it, and I'm going to – in exchange, I'm going to give you my vote. Okay. It has to be that person's intent to receive it corruptly in exchange for their vote. Okay?**" (206-07)

- Mr. Jackson (opening statement): "He secretly gave her benefits, tangible benefits like money and expensive trips, and intangible benefits like a relationship, attention, and sex. **In return**, the mayor committed official acts since she was the mayor, to approve the Palisades project." (313)

- Mr. Kearney (opening statement): "There's a simple question that you will be asked to answer at the very end of all of this. **Was there a bribe**?" (320)

- Mr. Kearney (opening statement): "They have to probe beyond any reasonable doubt that her [Laura's] intent at the time she accepted anything of value from Mark Jordan was to corruptly accept it. That means unlawfully accept it, **with the intent that she's going to be influenced in her vote on the Palisades project**." (320)

4

- Mr. Kearney (opening statement): "**You heard the prosecutor talk during jury selection about** *quid pro quo*. **They have to prove** *quid pro quo*, **in exchange for. That Laura accepted something from Mark Jordan in exchange for her vote**, and they have to prove that beyond a reasonable doubt, and there wasn't a legitimate reason for her vote." (321)

- Mr. Cogdell (opening statement): "The law. Let's talk about the law. **There must be a** *quid pro quo*. That requires corrupt intent. **There must be an agreement to exchange something of value for an official act. The judge will charge you I think, something like this.** In order to be guilty of bribery, the defendant must have corruptly gave or received a thing of value with the intent to influence any business of the City of Richardson." (333-34)

- Mr. Varadarajan (closing argument): "Those hopes, those expectations, that trust, it was shattered as the mayor took trip after trip after trip, she made deposit after deposit after deposit, she told lie after lie after lie **in exchange for vote after vote after vote after vote**." (3739)

- Mr. Varadarajan (closing argument): "And, most importantly, we know that the mayor was taking bullets for the developer. **'Taking bullets for the developer,' that's significant language, members of the jury, because it suggests a** *quid pro quo*. It suggests that she's doing him a favor." (3764)

- Mr. Kearney (closing argument): "**This case is about bribery,** *quid pro quo*, **giving a vote in exchange for something of value.** That's what they have to prove, and that's why they fall far short in this case." (3779-80)

- Mr. Kearney (closing argument): "**The real issue: Was there a bribe? Let's talk** *quid pro quo*. **There is one thing – probably the only thing I'm going to agree with Ms. Rattan about in this whole trial is that what she said in voir dire, during the jury selection, if** *quid pro quo* **is required.** (3784-85)

- Ms. Rattan (closing argument): [Laura's vote] **was something she had that she was giving to him in exchange for the intangible things that you exchange, the attention, the sex, the hotel rooms, these things of value**." (3840)

- Ms. Rattan (closing argument): "She flipped her **vote for the value** – I'm going to marry the rich guy; I'm interested in the rich guy – the things that he could give to her and the things he was giving to her." (3842)

- Ms. Rattan (closing argument): "She was **getting things of value in exchange for her vote**." (3844)

5

The parties' arguments, and the evidence presented, thus bore all the hallmarks of a classic *quid-pro-quo* bribery case. So even if the "substantial" legal question that Judge Elrod identified in her recent order in the *Hamilton* case were resolved in Hamilton's favor — that is, if the *Hamilton* panel were to conclude that § 666 does not cover "mere gratuities", Ex. B, *Hamilton* Release Order at 2, but rather requires a showing of *quid-pro-quo* bribery — it would have no bearing on *this* case, which was tried as a *quid-pro-quo* bribery case. The word "gratuity," so far as the government could tell based on transcript searches, was not even mentioned in arguments before the jury. The jury found that the Jordans engaged in *quid-pro-quo* bribery.

It's worth noting that the probation office, too, sees this as a bribery rather than a gratuity case. In the Jordans' PSRs, the probation office applied the bribery guideline (U.S.S.G. § 2C1.1) rather than the gratuity guideline (§ 2C1.2). The Jordans objected, claiming that "the evidence does not establish that a *quid pro quo* bribery occurred." *See*, *e.g.*, Laura Jordan PSR, Addendum (doc. 382) at vi. Rejecting that argument, the probation office concludes that the Jordans were charged with and convicted of bribery and that "the Government's case is compelling." *Id*. The PSR explains that "[t]he substance of the offerings and the timing of when those items were given to/received by the defendant lend support

6

to the Government's argument they involved a corrupt purpose and were in fact bribes." *Id*. at vii.

The Jordans also complain post-trial about the way this Court charged the jury on the § 666 counts. *See* Motion for Judgment of Acquittal/New Trial (doc. 347) at 20-22. They say the Court erred by tracking the language of § 666, the Fifth Circuit's pattern jury instructions on § 666 offenses, Fifth Cir. Pattern Jury Instruction Nos. 2.33B & 2.33C, and their own proposed jury instructions before the first trial, Defs.' Proposed Jury Instructions (doc. 89) Requested Instruction Nos. 2 & 3. But Hamilton himself argued in his appeal that "[t]he statutory text [of § 666] with its focus on 'corrupt' actions undertaken with 'an intent to influence or reward' covered agents 'in connection with any business' or 'transaction,' calls for a *quid pro quo*." Ex. A, Hamilton Opening Br. at 16. So even if the *Hamilton* panel were to accept Hamilton's argument, then the charge the Court gave here (by tracking the statutory language) conveyed such a requirement.

Hamilton further argued that under the "straightforward reading" of § 666, "the statutory reference to 'reward' makes the timing of a *quid-pro-quo* payment immaterial—the payment can precede (influence) or follow (reward) the *quo* . . . but does not obviate the need to prove a *quid pro quo*." *Id*. In other words, Hamilton argues that the "reward" language only serves to clarify that the corrupt bribe can be paid after the relevant action so long as it is promised or agreed to

7

beforehand. But this is essentially what the government argued in this case. The government explained:

> Now, the thing of value can be given before or after the official act. It has to be given with the intent to influence – influence the act – or reward the act. So it doesn't matter if it came before the vote or after the vote. If it's something that the mayor is doing to wrap that vote up in a package and give it to the developer ***in exchange for the things of value***, both tangible and intangible, that he is giving her, then it is a corrupt influence and it is not acceptable.

Trial Tr. at 3856 (emphasis added); *Id*. at 18 ("This is a bribery case. You cannot accept value for a vote."). The government thus made clear to the jury that the timing of a *quid-pro-quo* payment is immaterial where the official actions (here, Laura's repeated votes in favor of Palisades rezoning) were taken "in exchange for the things of value." *Id*.; *see also United States v. Sun-Diamond Growers of California*, 526 U.S. 398, 404-05 (1999) ("for bribery there must be a *quid pro quo* — a specific intent to give or receive something of value *in exchange* for an official act") (emphasis in opinion); *United States v. Kemp*, 500 F.3d 257, 282 (3d Cir. 2007) (explaining that the "*quid pro quo* requirement is satisfied so long as the evidence shows a 'course of conduct of favors and gifts flowing to a public official *in exchange for* a pattern of official actions favorable to the donor'") (emphasis in opinion) (quoting *United States v. Jennings*, 160 F.3d 1006, 1014 (4th Cir. 1998))); *United States v. Griffin*, 154 F.3d 762, 764 (8th Cir. 1998) ("The core difference between a bribe and a gratuity is not the time the illegal payment is made, but the

8

*quid pro quo*, or the agreement to exchange [a thing of value] for official action"). And because, according to the First Circuit's decision in *Fernandez* (upon which the Jordans and Hamilton rely), "one cannot agree to perform an act in exchange for payment when that act has already been performed[,]" *Fernandez*, 722 F.3d at 19, the jury necessarily found that the agreement to exchange things of value for votes between Laura and Mark occurred before the votes.

The Jordans are also wrong to say that a "favorable decision [to Hamilton] in *Hamilton* also would support the Jordans' argument that a new trial is required concerning the convictions for Counts Eight, Nine, and Ten (the income tax-related counts)." Motion to Stay at 2. They concede, though, that the upcoming decision in *Hamilton* would not affect Mark's tax-related convictions. *Id*. But it will not affect Laura's either. The Jordans point out that "[g]ross income does not include the value of property acquired by gift, bequest, devise, or inheritance." *Id*. (citing 26 U.S.C. § 102(a)). That much is not in dispute, as the parties stipulated at trial as follows:

> The person who receives a gift does not have to report the gift to the IRS or pay gift or income tax on its value. Income from illegal activities, such as bribes, must be reported as income on the recipient's tax return.

Trial Tr. at 3722. Laura testified, and the defense argued, that the things of value Mark gave to her were gifts. The government argued they were bribes. Trial Tr. 3751 ("[a] bribe can never be a gift" and "can never be reported as a gift"); *see*

9

*also id*. at 3762 (arguing that Laura knew that the things of value she received from Jordan weren't gifts but bribes). By finding Laura guilty on the tax counts, the jury necessarily found that the things of value that Laura failed to report to the IRS were bribes rather than gifts. Thus, *Hamilton* has no effect on the Jordans' convictions on the tax counts.

One broader point is worth mentioning. The delay the Jordans seek can't be justified by the simple possibility that the law might change after they are sentenced. However the Fifth Circuit resolves the "substantial" question that Judge Elrod identified in *Hamilton*, it is surpassingly unlikely that *that* aspect of the Fifth Circuit's eventual decision, whichever way it goes, will affect the disposition of the Jordans' pending motions. Even the Jordans do not contend that this Court should table this case for untold months because some other aspect of *Hamilton* might conceivably affect their convictions or sentences. Nor can such a delay be justified, as the Fifth Circuit itself has indicated in analogous contexts. *See, e.g.*, *United States v. Stephens*, 689 F. App'x 251, 252 (5th Cir. 2017) (denying motion to hold in abeyance an appeal attacking § 924(c)(3)(B) as vague, even though the Supreme Court had recently granted certiorari to decide whether a "nearly identical" provision was vague); *Wicker v. McCotter*, 798 F.2d 155, 157-58 (5th Cir. 1986) (denying habeas relief and stay of execution in capital case even though the Supreme Court was set to decide possibly-related questions in pending cases).

After years of litigation, a properly instructed jury (twice) fairly convicted the Jordans of committing acts that violate the plain terms of § 666. The Jordans disagree, of course. But like any other defendants, they will be able to present their theories on appeal, armed with then-available law. Nothing in current law forbids the imposition of their sentences, and it is high time they started serving them and that the citizens of the City of Richardson see that those who abused the trust placed in them are held accountable.

For these reasons, the Court should deny the Jordans' motion for a stay.

Respectfully submitted,

BRIT FEATHERSTON
United States Attorney
Eastern District of Texas

/s/ Bradley Visosky
BRADLEY VISOSKY
Assistant United States Attorney
Texas Bar No. 24034727
bradley.visosky@usdoj.gov

G.R. JACKSON
Assistant United States Attorney
Texas State Bar No. 00784874
glenn.roque-jackson@usdoj.gov

HEATHER RATTAN
Assistant United States Attorney
Texas State Bar No. 16581050
heather.rattan@usdoj.gov

ANAND VARADARAJAN
Assistant United States Attorney
Texas State Bar No. 24088576
anand.varadarajan@usdoj.gov

BRENT LLOYD ANDRUS
Assistant United States Attorney
New York State Bar No. 5143474
brent.andrus@usdoj.gov

101 East Park Boulevard, Suite 500
Plano, Texas 75074
(972) 509-1201
(972) 509-1209 (fax)

SEAN J. TAYLOR
Assistant U.S. Attorney
Texas Bar No. 24075147
sean.taylor@usdoj.gov
600 East Taylor, Suite 2000
(903) 868-9454
(903) 892-2792 (fax)

## Certificate of Service

I certify that a true copy of this response will be sent to counsel for the defendants through use of the Court's CM/ECF system.

/s/ *Bradley Visosky*
Bradley Visosky
