IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | No. 4:18-CR-87 |
| | § | |
| LAURA JORDAN | § | |

### REPLY TO GOVERNMENT'S RESPONSE IN OPPOSITION TO MOTION FOR RELEASE ON BOND PENDING APPEAL

Laura Jordan submits this reply to the government's response in opposition to her motion for release on bond pending appeal. The government concedes that the jury instructions were erroneous in light of *Hamilton*[1] and that the *Hamilton* error itself is thus a "substantial question." The government argues, however, that the *Hamilton* error was "harmless beyond a reasonable doubt" – a reference to the Supreme Court's seminal decision in *Chapman v. California*, 386 U.S. 18 (1967) – and that bond should be denied for that reason.[2]

As an initial matter, the government's response fails to make the important distinction between (1) whether this Court believes the *Hamilton* error is harmless beyond a reasonable doubt (a position taken by this Court in its August 3, 2022 order); and (2)

---

[1] *United States v. Hamilton*, __ F.4th __, 2022 WL 3593974 (5th Cir. Aug. 23, 2022).

[2] The "harmless beyond a reasonable doubt" standard as applied to the *Hamilton* error is ultimately governed by the Supreme Court's seminal decision in *Chapman*. *See Neder v. United States,* 527 U.S. 1, 15-16 (1999) (citing *Chapman,* 386 U.S. at 24); *see also Hedgpeth v. Pulido,* 555 U.S. 57, 61 (2008) (per curiam) ("Although [cases such as *Neder* ] did not arise in the context of a jury instructed on multiple theories of guilt, one of which is improper, nothing in them suggests that a different harmless-error analysis should govern in that particular context.").

whether the harmless-error issue is itself a "substantial question" that, if resolved in Ms. Jordan's favor on appeal, would require reversal of Ms. Jordan's convictions (thereby satisfying § 3143(b)). The government errs by separating the harmless-error inquiry from the underlying *Hamilton* issue under § 3143(b). In deciding whether to reverse a defendant's conviction based on a constitutional claim raised on on appeal, an appellate court both assesses the "merits" of the legal issue and then determines (if a constitutional error is found) whether reversal is required after applying the *Chapman* standard. "The determination of whether any constitutional error is harmless . . . is part and parcel of a merits adjudication of the issue." *McCarley v. Kelly*, 759 F.3d 535, 550 (6th Cir. 2014) (Daughtrey, J., concurring), *vacated and remanded*, 576 U.S. 1048, *on remand*, 801 F.3d 652, 661 (6th Cir. 2015) (quoting Judge Daughtery's concurring opinion with approval).

To obtain bond on appeal, Ms. Jordan need only show that it is "fairly debatable" that the undisputed *Hamilton* error is not harmless under *Chapman*'s "demanding" standard, which places a "decidedly heavy burden" on the government.[3] *See United States v. Valera-Elizondo*, 761 F.2d 1020, 1022 n.5 & 1024 (5th Cir. 1985) (explaining bond on appeal is required if an issue that could result in reversal of the defendant's convictions is "fairly debatable"). Put another way, the issue is not whether this Court believes that its August 3, 2022 ruling that the *Hamilton* error is harmless is incorrect and is likely to be reversed on appeal. *Id.* at 1022 ("All parties agree that . . . the district court misinterpreted

---

[3] *United States v. York*, 852 F.2d 221, 226 n.3 (7th Cir. 1988) (describing *Chapman* as "rigid" and "demanding" of the prosecution on appeal); *see also United States v. Waller*, 654 F.3d 430, 438 (3d Cir. 2011) (noting the *Chapman* standard imposes a "decidedly heavy burden" on the government "to demonstrate that reversal is not warranted").

section 3143(b)(2) to mean that a court may grant bail only if it finds that its own rulings are likely to be reversed on appeal."); *see also id.* (noting such a "capricious" standard would require a "trial judge to certify his or her own error," even though "[j]udges do not knowingly leave substantial error uncorrected").  The issue is simply whether reasonable jurists could decide the harmless-error issue the other way.  *See id.*

Ms. Jordan's recent supplement to her motion (ECF No. 417) demonstrates why her *Chapman* harmless-error argument is meritorious or, at the very least, is "fairly debatable" – when the evidence at trial is viewed in a light most favorable to Ms. Jordan, as it must be.[4]  As she has explained in detail in prior filings, when the record is viewed in that light, there is evidence that she accepted "rewards" but did not do so based on a prior agreement by Ms. Jordan to be "influenced."[5]  The test is not whether there was *more* evidence supporting a *quid pro quo* than rebutting it.  The error is harmless only if a rational jury, when viewing the evidence in a light most favorable to Ms. Jordan, could *only* find a *quid pro quo*.  Because that is simply not the case here, the error is not harmless under *Chapman*.

---

[4] *See United States v. Hands*, 184 F.3d 1322, 1330 n.23 (11th Cir. 1999) ("Harmless error review, unlike a determination of the sufficiency of the evidence, does not require us to view witnesses' credibility in the light most favorable to the government."); *United States v. Chavez*, 976 F.3d 1178 (10th Cir. 2020) (same); *see also Sansing v. Ryan*, ___ F.4th ___, 2022 WL 3016037, at *11 (9th Cir. 2022) (specifically recognizing that, in a *Neder* harmless-error analysis, a reviewing court must assess the record in a light most favorable to the criminal defendant – not the prosecution).

[5] In its response, the government erroneously looks at the evidence in the light most favorable to the government.  For instance, the government focuses on the evidence it presented that Ms. Jordan, after beginning her affair with Mr. Jordan, supposedly changed her position about the Palisades development (and, in particular, her position on the building of apartments) that she had taken before her election as mayor.  Government's Response, at 8.  The problem with that view of the evidence is that there was *other evidence* – Ms. Jordan's own testimony at trial – that she had supported the Palisades development (including the proposed apartments) *before* she and Mark Jordan became romantically involved and before any benefits were given to her by him.  Trial Tr. 3366-3417.  A rational jury certainly could credit that testimony.

3

Although the prosecutors at trial argued that the evidence proved a *quid pro quo*, they also repeatedly reminded the jury that, based on this Court's instructions, it could convict Ms. Jordan for a "reward" from Mr. Jordan that was not intended to "influence" her votes.[6] The prosecutors equated a "reward" not intended to "influence" an official act with an illegal "bribe"[7] – when *Hamilton* tells us that "influencing" an official act is required under § 666(a)(1) for there to be a "bribe."

We cannot assume that a rational jury simply ignored the Court's instructions and the prosecutors' arguments underscoring them. As instructed, the jury could convict Ms. Jordan of accepting "rewards" even if jurors had a reasonable doubt about whether she *agreed in advance* to be "influenced" in her votes. It must be presumed that, acting in a rational manner, the "jurors follow[ed] [this Court's] instructions" as written. *Yates v. Evatt*, 500 U.S. 391, 404 (1991), *overruled on other grounds*, *Estelle v. McGuire*, 502 U.S. 62 (1991).

A related presumption is that jurors are not bound by the manner in which the parties' attorneys frame the factual and legal issues in their closing arguments. Indeed, this Court instructed jurors that:

> You, as jurors, are the judges of the facts. But in determining what actually

---

[6] For instance, in her rebuttal argument, the prosecutor stated: "The thing of value can be given before *or after* the official act. It has to be given with the intent to influence – influence the act – *or reward the act*." (Trial Tr. at p. 3856; emphasis added).

[7] Trial Tr. at 3769 ("Actions taken with a dual motive **constitute bribery** so long as one of the motives – just one of the motives – 'is to influence *or reward* a public official, or, in the case of the public official, to be influenced *or rewarded*.'") (quoting from the jury instructions; emphasis added); *id.* at 3844-45 ("**Bribery** can be a *reward* that's given either before or *after the official act*.") (emphasis added).

4

> Happened – that is, in reaching your decision as to the facts – it is your sworn duty to follow all of the rules of law as I explain them to you. You have no right to disregard or give special attention to any one instruction, or to question the wisdom or correctness of any rule I may state to you. You must not substitute or follow your own notion or opinion as to what the law is or ought to be. It is your duty to apply the law as I explain it to you, regardless of the consequences. It is also your duty to base your verdict solely on the evidence . . . . As I told you earlier, it is your duty to determine the facts. To do so, you must consider only the evidence presented during the trial. Evidence is the sworn testimony of the witnesses, including stipulations, and the exhibits. The questions, statements, objections, and arguments made by the lawyers are not evidence.

ECF No. 310, at 1-3.

The government's response also misconstrues (and only selectively quotes) a passage in footnote 2 of the Fifth Circuit's decision in *United States v. Skilling*, 638 F.3d 480, 482 n.2 (5th Cir. 2011), for the proposition that strong evidence of a defendant's guilt on a "valid" theory of the offense renders harmless the "invalid" theory in the trial court's jury instructions. Government's Response, at 5-6. A careful reading of *Skilling* demonstrates that the court was referring to an alternative harmless-error analysis not applicable to the *Hamilton* error in Ms. Jordan's case:

> Skilling argues that to prove harmlessness, the Government must show "complete factual identity" between the valid and invalid theories of guilt. This argument is not consistent with *Neder*, which permits a court to find harmlessness based solely on the strength of the evidence supporting the valid theory, regardless of the evidence presented in support of the invalid theory. Further, Skilling provides absolutely no support for his erroneous claim that, to succeed, the Government must show that the valid theory was the only factually supportable basis on which the jury could have convicted.

*Id.*[8]

---

[8] The Fifth Circuit explained that there are two different harmless-error analyses applicable to "alternative-theory error":

In conducting the first type of harmless-error analysis, which is the only type that applies to Ms. Jordan's *Hamilton* claim, a reviewing court does *not* disregard "the evidence presented in support of the invalid theory." Instead, the error is harmful if there is *any* evidence on which a rational jury could have convicted based on the invalid theory. *Neder*, 527 U.S. at 19; *Skilling*, 638 F.3d at 482.

Finally, the government errs by contending that the Fifth Circuit's decision in *Hamilton* supports its position that the error in Ms. Jordan's case is harmless. Notably, the government in *Hamilton* made the same harmless-error argument that the government makes in Ms. Jordan's case, and the Fifth Circuit clearly was not persuaded by it. In particular, the government in *Hamilton* contended:

> To the extent this Court finds some [jury] charge error, it was harmless given the overwhelming evidence that Hamilton bribed. . . . Indeed, Hamilton

---

There are two ways to prove the harmlessness of an alternative-theory error. First, as set forth in *Neder v. United States*, . . . an error is harmless if a court, after a "thorough examination of the record," is able to "conclude beyond a reasonable doubt that the jury verdict would have been the same absent the error." 527 U.S. at 19. If the defendant "raised evidence sufficient to support a contrary finding," then the error was not harmless. *Id.* Thus, under the so-called *Neder* standard, a reviewing court, "in typical appellate-court fashion, asks whether the record contains evidence that could rationally lead to [an acquittal] with respect to the [valid theory of guilt]." *Id.* [FN1]

Second, as we held in *United States v. Holley,* 23 F.3d 902 (5th Cir.1994), and *United States v. Saks,* 964 F.2d 1514 (5th Cir.1992), an alternative-theory error is harmless if the jury, in convicting on an invalid theory of guilt, necessarily found facts establishing guilt on a valid theory. [FN2]

*Skilling*, 638 F.3d at 482. Footnote 2 is associated with the second paragraph above, not the first. Whether there is strong evidence of guilt of the "valid theory" is not sufficient to find harmless error under the first type of harmless-error analysis. Instead, the question is whether, regardless of the strength of the government's evidence of the valid theory, there was *any* evidence (when viewed in a light most favorable to the defendant) on which a rational jury could acquit. *Id.* at 482. A review of the parties' briefs in *Skilling* confirms that footnote 2 referred to the second, not the first, type of harmless-error analysis. *See* [Appellant's] Opening Brief on Remand from the United States Supreme Court, No. 06-20885, 17-18 (filed Aug. 3, 2010); United States' Response to Appellant's Opening Brief on Remand from the United States Supreme Court, No. 06-20885, at 28 (filed Aug. 30, 2010).

6

>recognized that "this case is about bribery," the indictment focused on "bribe payments and corrupt agreements for future action, the proof at trial was consistent with the charges, the charge for the Section 666-related counts referred to "bribery" or "bribe[s]" repeatedly, and the closing arguments focused solely on bribes[,] referring to the government's "theory of bribery with a corrupt intent" [and arguing] "That's a substantive count of bribery."

Brief for the Appellee, at 26, *United States v. Hamilton*, No. 21-11157 (5th Cir. Apr. 13, 2022) (citations omitted); *see also* Government's Response to Hamilton's Renewed Motion For Release Pending Appeal 7, *United States v. Hamilton*, No. 21-11157 (5th Cir. July 14, 2022) ("[E]ven if the Court finds error with the jury charge, any error was harmless because the evidence showed that Hamilton bribed . . . . The jury never heard the word 'gratuity' mentioned in the Section 666 context, and the only references to the term 'reward' described a bribe . . . . Even Hamilton said before trial that this case was about bribes, and only switched tacks after the verdict. Any [jury] charge error was harmless."). The Fifth Circuit in *Hamilton* clearly did not accept the government's harmless-error argument.

For all these reasons, Ms. Jordan has shown a "substantial question" on appeal that, if resolved in her favor, will lead to the reversal of her convictions of the charges in Counts Five and Six.

Regarding the tax-related counts, the government contends that Ms. Jordan offers no support for her argument that a "reward/gratuity (without a *quid pro quo*) would not qualify as taxable income." Government's Response, at 14. The government claims that *Dobbe v. Comm'r*, T.C. Memo 2003-330, 2000 WL 1586383, at *11-12 (U.S. Tax Ct. Oct. 25, 2000), holds that a mere reward/gratuity, without a *quid pro quo*, is taxable income.

7

There are two significant problems with the government's reliance on *Dobbe* – in addition to the government's stipulation at trial that only "income from *illegal* activities, such as bribes"[9] must be reported as income. Government's Response, at 14 n.3 (emphasis added). First, *Dobbe* involved a purported gift from an employer to an employee that, by the employer's own admission, was not really a "gift." *See id.* at *12 ("We conclude that Holland America purchased the golf clubs for Mr. Heemskerk as an incentive for future performance and in appreciation for his past services to the company. Thus, Holland America did not give the golf clubs to Mr. Heemskerk out of a 'detached and disinterested generosity'; *rather, Holland America anticipated receiving an economic benefit in the future*. . . . Accordingly, we hold that the golf clubs were not a 'gift' within the meaning of section 274(b).") (emphasis added). If a rational jury believed that Mark Jordan gave Ms. Jordan rewards that were not given in anticipation of receiving an economic benefit in the future – which a rational jury could conclude from the evidence offered at trial – then there would be no taxable income under *Dobbe*.

Second, even assuming *arguendo* that "rewards" (without a *quid pro quo*) qualified as taxable income under *Dobbe*, that hardly means that Ms. Jordan possessed the heightened willful *mens rea* required for conviction under *Cheek v. United States*, 498 U.S.

---

[9] As previously noted, the government's closing argument, consistent with this Court's jury instructions, defined "bribe" to include both a "reward" for an official act (without a *quid pro quo*) and a benefit that influenced an official act. This Court's jury instructions concerning the wire fraud charges did the same. ECF No. 310, at 13, 17 (defining "bribery" to include both benefits that "influence" and "reward" official acts). In addition, the headings of Counts Five, Six, and Seven all referred to benefits that "influence" or "reward" official acts as "BRIBERY" or "BRIBE." *Id.* at 19, 21, 24. Finally, the parties' stipulation about whether gifts are taxable said "*including* bribes" – but did not limit "illegal activities" to *quid pro quo* bribes.

8

192 (1991). Indeed, if the lawyers in this case are debating the meaning of obscure Tax Court decisions regarding whether "rewards" qualify as "income," how could a layperson such as Ms. Jordan be expected to understand the consequences of failing to report as income "rewards" that lacked a *quid pro quo*? At the very least, for this reason *Hamilton* clearly calls into serious question the validity of Ms. Jordan's tax-related convictions.

Finally, the government contends that, even if the other benefits did not qualify as "income," then at least the $10,000 "commission" and $5,250 in "reimbursement for legal expenses" were "income" and would support the tax-related convictions, notwithstanding *Hamilton*. Government's Response, at 14. Yet again, however, the government fails to consider the evidence at trial in the light most favorable to Ms. Jordan in the harmless-error analysis related to the tax charges. Ms. Jordan testified at trial that the $5,250 was reimbursement for legal fees that she had incurred in connection with an ethics investigation regarding her accepting employment with Sooner (which would not qualify as "income")[10] and that the $10,000 was an outright (non-taxable) gift from Mark Jordan – not a "commission" related to her employment. Trial Tr. 3533-3536. A rational jury

---

[10] *Cf. United States v. Gotcher*, 401 F.2d 118, 121 (5th Cir. 1968) ("In determining whether the expense-paid trip was income within section 61, we must look to the tests that have been developed under this section. The concept of economic gain to the taxpayer is the key to section 61. . . . This concept contains two distinct requirements: There must be an economic gain, and this gain must primarily benefit the taxpayer personally."). A rational jury could have found that the reimbursement of Ms. Jordan's legal fees by Mr. Jordan was primarily for the benefit of Mr. Jordan because the payment of the fees related to Ms. Jordan's employment by Sooner. At the very least, this area of tax law is so arcane and complex that a rational jury could have acquitted Ms. Jordan based on a reasonable doubt that she *willfully* violated the tax laws by failing to report the reimbursement as "income."

could have credited that testimony and acquitted her of the tax charges related to those two benefits provided by Mark Jordan.

Of course, we have no way of knowing on what specific basis the actual jury convicted Ms. Jordan of the tax-related charges – just like we do not know the basis on which the jury convicted Ms. Jordan of the charges in Counts Five and Six – because it returned a general verdict. But the bottom line is that the government cannot prove beyond a reasonable doubt under *Chapman* that the *Hamilton*-related error did not contribute to all those convictions. At a minimum, there is a "substantial question" here that, if resolved in Ms. Jordan's favor, will require the reversal of all her convictions.[11]

Therefore, this Court should grant her motion and release her on bond pending her appeal.

Respectfully submitted,

*/s/ Brent E. Newton*
Brent E. Newton
Gerger, Hennessy & Martin LLP
700 Fannin, Suite 2300
Houston, Texas 77002
202-975-9105 – Telephone
713-224-5153 – Fax
bnewton@gkmfirm.com

---

[11] Even assuming *arguendo* that *Hamilton* did not require reversal of Ms. Jordan's tax-related convictions, those convictions alone would place her in a significantly lower sentencing range than she faced at sentencing on the bribery counts. *See* Laura Jordan's Presentence Report ¶¶ 30-36 (final offense level of 12 under USSG § 2T1.4). The appellate process likely will take longer than any sentence properly imposed for just those convictions.

## CERTIFICATE OF SERVICE

On August 29, 2022, the foregoing was filed and distributed to all counsel of record through the Court's ECF system.

/s/ *Brent E. Newton*
Brent E. Newton