UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | NO. 4:18-CR-87 |
| | § | Judge Mazzant |
| LAURA JORDAN (1) | § | |
|     a/k/a Laura Maczka | § | |
| MARK JORDAN (2) | § | |

**GOVERNMENT'S RESPONSE TO DEFENDANTS' MOTION
FOR A NEW TRIAL, FOR DISCOVERY, AND FOR AN EVIDENTIARY HEARING**

Mark and Laura Jordan were convicted by a jury of their peers. This Court

denied their first request for a new trial, and the United States Court of Appeals for

the Fifth Circuit affirmed their bribery and substantive tax convictions. Even still,

the Jordans refuse to accept responsibility for their crimes. In Laura Jordan's own

words,[1] this latest motion is a "hail Mary" —a futile attempt to further delay

serving the sentence this Court imposed.

The Jordans ask for a new trial based on newly discovered evidence. But

they don't have any newly discovered evidence—or any evidence at all. And the

evidence they wish existed would only be impeaching. It would not be material or

---

[1] After the denial of the Jordans' en banc petition, Laura Jordan sent an email to "Team Jordan" entitled "4th and Long at the end of the 4th Quarter []." In the email, Laura Jordan provides procedural updates on their case and lays out three options moving forward: (1) accept and serve their prison sentence; (2) appeal to the Supreme Court; and (3) "evaluate other plays…and pull out a hail Mary in hopes of winning." Tellingly and unsurprisingly given the desperate filings before this Court, Laura Jordan says that her team has "made the decision to continue to pursue all options that keep us out of prison."

likely to lead to an acquittal at a third trial.  The Court should deny the motion.

**LEGAL STANDARD**

**Motion for New Trial — Fed. R. Crim. P. 33(a)**

Under Rule 33, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). The Court should not grant a new trial "unless there would be a miscarriage of justice or the weight of evidence preponderates against the verdict." *United States v. Wright*, 634 F.3d 770, 775 (5th Cir. 2011) (cleaned up). "The power to grant a new trial 'should be exercised infrequently by district courts, unless warranted by exceptional circumstances.'" *United States v. Hemen*, 202 F. Supp. 3d 629, 633 (E.D. Tex. 2016) (quoting *United States v. Tarango*, 396 F.3d 666, 672 (5th Cir. 2005)).

**ARGUMENT**

**I.      The Jordans Can Prove None of the Requirements for a New Trial.**

As a general rule, there are five prerequisites that must be met to justify a new trial on the ground of newly discovered evidence.  *United States v. Wall*, 389 F.3d 457, 467 (5th Cir. 2004).  The defendant must prove that (1) the evidence is newly discovered and was unknown to the defendant at the time of trial; (2) the failure to detect the evidence was not due to a lack of diligence by the defendant; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence if introduced at a new trial would probably produce

an acquittal. *Id.* If the defendant fails to demonstrate any one of these factors, the motion for new trial should be denied. *Id.*

### A. There is no newly discovered evidence.

The Jordans do not present the Court with any newly discovered evidence. In fact, they don't present any evidence at all—just wild speculation and wishful thinking. Instead of presenting the Court with new evidence that would probably lead to an acquittal at a third trial, the Jordans ask the Court to re-open discovery and empower them to go on a fishing expedition.

At trial, the government represented to the Court that the U.S. Attorney's Office had made no promise and gave no benefit to Sarah Catherine Alford that had not been disclosed to the defense, (Trial Transcript, Vol. 2 at 291), and the government stands by that representation.

But now the Jordans attempt to conjure up a *Brady* violation by pointing to emails from Sarah Catherine Alford and her husband. First, Mr. Alford's email alludes to "evidence . . . that could materially alter the [government's] case against [Mark Jordan]." Of course, the Jordans have no such evidence. And more importantly, neither does the government (because it doesn't exist). If the Jordans could show that exculpatory evidence exists, that such evidence was in the possession of the government, and that the government had not disclosed it to the defense, then they might have a point. But there is no indication that any of these

things is true. The Jordans have the burden to bring the Court newly discovered evidence, *see Wall*, 389 F.3d 467. They have presented none. Instead their motion is based on rank — and reckless — speculation that has no foundation in reality. *See, e.g.*, Motion at 9 ("it appears that"; "It appears to me"; "presumably . . ."; "strongly indicate"; "strong likelihood").

What's worse, the Jordans make representations to the Court as if their unsupported speculation is fact. *Id.* at 1-2 ("there is newly discovered evidence that a key witness at trial, Sarah Catherine Alford, was provided undisclosed benefits in return for her testimony and that she perjured herself at trial"); *id*. at 9 ("Based on what we now know, it appears that, before the 2021 trial, the agents or prosecutors did discuss with Ms. Alford her potential civil or criminal liability for her unpaid taxes on the money that she embezzled"); *id*. at 6 ("The 'protection' promised to Sarah Catherine Alford . . ."). But as support for these accusations the Jordans rely on the "opinion" of their paid expert, Stephen Scheets, who said that "[i]t appears to me that somebody, somewhere, has protected Norris/Alford" because "it is not normal for the IRS to ignore over a million dollars of untaxed money." Ex. 4 to Motion, ¶ 31. But neither Scheets nor the Jordans establish that Alford criminally evaded her taxes, nor, more importantly, do they put forth evidence, as opposed to rank speculation, that "somebody, somewhere" in the government promised to "protect" Alford from any civil or criminal tax liability in exchange for her

testimony. There absolutely was no such promise, and for the Jordans to even suggest such a thing in a filing without any evidence to support it is reckless at best and done in bad faith at worst.[2]

The Jordans have no "new evidence" to support their Motion for New Trial Based on Newly Discovered Evidence. The Court should deny their motion.

**B.      The "new evidence" the Jordans are hoping for would merely be cumulative or impeaching, not material.**

The Jordans hope that, through new discovery, they will find evidence to impugn Sarah Cathern Alford's credibility.  But evidence that is merely impeaching does not warrant a new trial.  Mere impeachment evidence that only casts doubt on the veracity of a witness's testimony and demonstrates bias on her part "is insufficient to entitle a defendant to a new trial." *United States v. McClaren*, 13 F. 4th 386, 416-17 (5th Cri. 2021) (quoting *United States v. Eghobor*, 812 F.3d 352, 363 (5th Cir. 2015)); *see United States v. Garcia-Esparza*, 388 F. Appx. 407, 408

---

[2] The Jordans also insinuate that the fact that the government did not reply to the post-second-trial emails of Sarah Catherine Alford and her husband somehow shows that the government did not "disput[e] the truth" of the wild statements made in those emails. Motion at 5. This is yet another reckless accusation. The statements in Ms. Alford's email, on their face, made no sense. For example, Ms. Alford claimed that "your prior US Attorney [Joe Brown] and my old attorney made sure I didn't take the fifth and testified on credit cards I knew nothing about." Exhibit 3 to Motion. The Jordans fail to explain why, if Ms. Alford "knew nothing about" her own credit-card statements, she would have sought to invoke any Fifth Amendment right or how USA Brown or her "old attorney" "forced" her to testify. *Id*. The government itself did not learn about Ms. Alford's withdrawals from the business for personal expenses until Ms. Alford was cross-examined during the first trial.

(5th Cir. 2010) (evidence introduced to show a witness "lied extensively on the witness stand . . . is impeaching and not a basis for a new trial.").

The Jordans would like to show that Ms. Norris lied on the stand and was promised benefits by the U.S. Attorney's Office that they didn't know about.  But even if these were true (which they aren't), they would be immaterial because they would only form a basis to impeach Ms. Norris.  And, according to the Fifth Circuit, "[n]ewly discovered evidence is not material if its only evidentiary purpose it to impeach trial testimony." *McClaren*, 13 F.4th at 416-17.  Even if the Jordans were to discover impeachment evidence at the conclusion of their fishing expedition, it wouldn't move the needle towards a new trial.  Indeed, the Jordans already spent considerable time and effort attempting to impeach Ms. Norris, going so far as "reserving" their cross examination of her so they could make a spectacle of calling her during their case-in-chief.  That ship has now sailed.  The Court should deny the motion.

C.      **The Jordans are unlikely to be acquitted at a third trial.**

Even were the Jordans to discover new evidence with which they could impugn Ms. Norris' credibility at a third trial, such evidence would probably not produce an acquittal.  *See Wall*, 389 F.3d at 467 (defendant must prove that the evidence, if introduced at a new trial, would probably produce an acquittal).  In their attempt to bolster the importance of Ms. Norris' testimony at trial, the Jordans build

a straw man when they point to the prosecutor's remarks in closing argument that Ms. Alford "says that Mark told her that it was about using the relationship to get the mayor to do what he wanted, which was to vote for the Palisades and vote for the apartments. They are afraid that you'll believe that." (Defendants' Mot. For New Trial at p. 11.)

But in her next breath, the prosecutor tells the jurors that they don't need to believe Ms. Alford's testimony in order to convict the Jordans:

> But here's the reality. What's on the timeline that relates to Sarah Catherine Norris? It's just this one thing right here: Jordan says he needs Maczka's vote.[3] Well, we already know that. He wants the Palisades to pass. So do you even have to rely on something that Sarah Catherine Norris says to return a verdict that's based on the evidence to find that there was value given in exchange for a vote? You don't. You don't have to rely on Sarah Catherine Norris's testimony.

(Trial Transcript, Vol. 14, at 3865.) Despite the amount of attention she received from the defense at trial, Ms. Alford's testimony wasn't all that important to the government's case. And perhaps more importantly, it wasn't uncorroborated by other evidence.

---

[3]The Court will recall that the government presented certain pieces of evidence through magnetic tiles on a board, which were laid out in chronological order. (*See* Exhibit 1, which was Government's Exhibit 294 at the second trial.) Of the 37 items of evidence presented on the board, only one was based on Ms. Alford's testimony. And as the prosecutor mentioned in her closing argument, the jury did not need to rely on Ms. Alford's testimony in order to find the Jordans guilty.

In surveying some of the evidence of a quid pro quo, the Fifth Circuit noted:

> The record establishes that Mark and Laura were involved long before the first vote, that Laura was 'taking bullets' for Mark over the project before the first vote, and that Mark told multiple people he was merely using Laura to get what he wanted. The record also indicates that multiple people, including but not necessarily limited to Norris, Karen, and the contractor who worked on Laura's house, warned Mark about his inappropriate involvement with the mayor to get his zoning passed and his attempts to cover it up. Mark also told Karen that he owed Laura (money, renovations, etc.) because she made them a lot of money.

*United States v. Jordan*, No. 22-40519, 2023 WL 6878907, at *6 (5th Cir. Oct. 18, 2023). After recounting the extensive evidence of quid pro quo bribery against the Jordans, the Fifth Circuit opined:

> The district court made an explicit finding that it was concluding beyond a reasonable doubt that Mark and Laura would have been convicted even under the correct [bribery] instruction. We agree with that finding.

*Id.* at *8. Both this Court and the Fifth Circuit have concluded that the evidence of quid pro quo bribery against the Jordans was strong. The introduction of potentially impeaching evidence against a single witness would not likely result in the Jordans' acquittal at a third trial. So the Court should deny the Motion for a New Trial.

II.     **The Court should not enable this fishing expedition by reopening discovery and holding an evidentiary hearing.**

Finally, in their attempt to relitigate every possible issue, the Jordans ask the Court to allow them to engage in even more discovery on an even more speculative claim regarding two recordings the government introduced at trial. Notably, the

government produced these recordings to the defendants more than five years before they filed the instant motion,[4] and clips of the recordings came into evidence on the first day of trial without objection. (Trial Transcript, Vol. 2, at 355.) Only now, over two years after the conclusion of the second trial, two weeks after the Fifth Circuit affirmed their convictions, and the same day that they asked not to have to report to the Bureau of Prisons, do the Jordans produce an affidavit claiming that these recordings have been altered. Their ask is that the Court order the government to produce the original recordings. But the Jordans give no explanation as to why they lied behind the log for over five years.

To be certain, the government is unaware of any alterations made to these recordings. But tellingly, the Jordans cite no authority for the Court reopening discovery to allow for this speculative endeavor. Neither do they articulate how any possible alteration of these recordings could lead to their acquittal at a third trial.

Long ago, the Supreme Court of the United States noted that, while it "stands ready to correct violations of constitutional rights, it also holds that 'it is not asking too much that the burden of showing essential fairness be sustained by him who claims such injustice and seeks to have the result set aside, and that *it be sustained not as a matter of speculation but as a demonstrable reality*." *United States ex rel.*

_____

[4]The government initially produced discovery to the defense, including the recordings at issue, in May 2018. In anticipation of the second trial, the government re-produced this discovery to the defense in May 2021.

*Darcy v. Handy*, 351 U.S. 454, 462 (1956) (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 281 (1942)) (emphasis added).

The Jordans ask for the Court to grant extraordinary relief. However, their request is not sustained as a demonstrable reality but is mere speculation. They are not entitled to further discovery or an evidentiary hearing, so the Court should deny their request.

## CONCLUSION

The government met its discovery obligations, the Jordans were convicted at a fair trial, and the Fifth Circuit affirmed their convictions. It's now time for them to finally serve their sentence—just like every other person convicted of a crime. The Court should deny the defendants' motion for a new trial, for discovery, and for an evidentiary hearing.

Respectfully submitted,

DAMIEN M. DIGGS
UNITED STATES ATTORNEY

/s/ *Sean J. Taylor*
SEAN J. TAYLOR
Assistant United States Attorney
Texas State Bar No. 24075147
Email: sean.taylor@usdoj.gov

G.R. JACKSON
Assistant United States Attorney
Texas State Bar No. 00784874

HEATHER RATTAN
Assistant United States Attorney
Texas State Bar No. 16581050

ANAND VARADARAJAN
Assistant United States Attorney
Texas State Bar No. 24088576

101 East Park Boulevard, Suite 500
Plano, Texas 75074
972-509-1201
Fax: 972-509-1209

## CERTIFICATE OF SERVICE

This is to certify that on November 14, 2023, this motion was filed with the Clerk using the CM/ECF filing system, which will cause a copy of this motion to be delivered to counsel for defendants via electronic mail.

/s/ *Sean J. Taylor*
SEAN J. TAYLOR